**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

**NGUYEN WIN PROPERTIES LLC,**

**Debtor.**

**Case No. 25-11795-T**
**Chapter 11**

Filed/Docketed
Jun 29, 2026

**ORDER DENYING MOTION TO APPROVE SALE
OF DEBTOR'S INTEREST IN REAL PROPERTY**
**(related to ECF No. 243)**

THIS MATTER comes before the Court pursuant to the Corrected Motion to Approve Sales of Debtor's Interest in Real Property of the Estate Free and Clear of All Liens, Claims, Encumbrances and Interests ("the Motion"),[1] filed by Nguyen Win Properties LLC (the "Debtor"); an Objection,[2] filed by First Bank & Trust Co. ("First Bank"); and an Objection,[3] filed by Ilene J. Lashinsky, the United States Trustee for Region 20. The Court held an evidentiary hearing on the Motion on May 18, 2026 (the "Hearing"). After receiving evidence and hearing argument, the Court took the Motion under advisement. The following "Findings of Fact" and "Conclusions of Law" are being made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to this contested matter pursuant to Federal Rule of Bankruptcy Procedure 9014.

**Jurisdiction**

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[4] Venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of the bankruptcy case is

---

[1] ECF No. 243.
[2] ECF No. 276.
[3] ECF No. 278.
[4] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

proper pursuant to 28 U.S.C. § 157(a). Matters related to the sale of estate property are core proceedings as defined by 28 U.S.C. § 157(b)(2)(N).

## Findings of Fact

The above-referenced bankruptcy case was filed by Debtor, as a voluntary proceeding under Chapter 11 of the Bankruptcy Code on November 24, 2025 (the "Petition Date"). The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to §§ 1107 and 1108.  Debtor purports to own and operate a portfolio of residential real estate properties that generate income in the form of rental payments and proceeds as a vendor under contracts for deed.[5] Bao Quoc Mai Nguyen, also known as Paul Nguyen ("Mr. Nguyen") is the sole owner and manager/member of Debtor and the designated representative of Debtor as a debtor in possession.[6] According to its schedules, Debtor owns a fee simple interest in 123 parcels of real property ("Schedule A/B Properties").[7]  Debtor also represents that it holds an interest in 112 executory contracts or unexpired leases ("Schedule G Properties"); 54 of those contracts indicate "Contract to be ASSUMED"; the remaining 58 contracts are described as "Contract for Deed; Contract to be ASSUMED."[8] All Schedule G Properties indicate there are 0 months remaining in the contract or lease term.[9] The persons listed as counterparties are presumed to be renters or buyers under contracts for deed from Debtor.

*Proposed Sale Properties*

In the Motion, Debtor seeks to sell certain property of the estate outside its ordinary course

---

[5] ECF No. 266, at 1.

[6] Designation and Acceptance of Individual Responsible for Discharging Debtor's Duties, ECF No. 80, at 3.

[7] Schedule A/B, Part 9 ¶ 55 (Real Property), ECF No. 55, at 6-19.

[8] Schedule G, ECF No. 55, at 114-31.

[9] *Id.*

of business pursuant to § 363(b) in four separate private sales.  The property to be sold is described as "all of the bankruptcy estate's right, title and interest, in the property more completely described herein, including Debtor's interest in contracts for deed affecting those properties."[10]  Debtor suggests that each property will be sold to a prospective buyer "according to the terms of the respective sales agreements via quit claim deeds."[11] No sales agreements are attached to the Motion, nor were they offered as evidence at the Hearing.  The Motion describes the terms of each sale as follows:

1.  7144 E. Marshall Pl., Tulsa, OK 74115 (the "Mendoza Property"), will be sold to Kelly Mateo Mendoza, the assignee of the original contract for deed holder pursuant to a contract for $160,000.00, of which $160,000.00 remains due and owing, less closing costs, which shall be paid pursuant to 11 USC §502 at closing to the mortgage holder, First Bank and Trust, on its secured claim, reserving any claims that the Debtor has against First Bank and Trust.

2.  17778 S. Hwy 75A Mounds, OK 74047 (the "Mounds Property"), will be sold to JM Property Holdings, LLC pursuant to a deed of trust/mortgage for $600,000.00, of which $211,953.25, plus interest from April 1, 2026, remains due and owing, which shall be paid pursuant to 11 USC §502 at closing to the mortgage holder, First Bank and Trust, on its secured claim, reserving any claims that the Debtor has against First Bank and Trust.

3.  18534 East 4th Street, Tulsa OK 74108 (the "Rodriguez Property") will be sold to Juan Marco Antonio Rodriguez pursuant to a contract for deed / mortgage for $152,635.00,

---

[10] ECF No. 243, at 2 ¶ 4.
[11] *Id*. at ¶6.

of which $128,236.00, plus interest remains due and owing to Selene Finance, L.P. and taxes and closing costs shall be paid.

4.  The Debtor also seeks permission to complete the sale of 3220 S. Knoxville Ave. Tulsa, OK 74135 (the "Hot Coffee Property"), to Hot Coffee Homes, LLC. That property was sold pre-petition, but Debtor has retained a mortgage for $800,000.00, of which $796,509.92, plus interest from April 1, 2026, remains due and owing. This payoff amount is to be paid at closing to Debtor. Debtor proposes to pay these funds to First Bank and Trust, on its claim in exchange for a release of mortgage on this property, with the Debtor reserving any claims that it has against First Bank and Trust.[12]

The Court will refer to these as the "Proposed Sale Properties."   It will refer to the buyers collectively as the "Proposed Buyers."

*The Mendoza Property*

On February 10, 2020, Debtor, as seller, and William Ramos Mendoza ("Mendoza"), as buyer, "made and entered into" a contract for deed for the Mendoza Property (the "Mendoza Contract").[13] The contract price was $60,000, to be paid as a $2,000 downpayment, then regular monthly payments of $521.47 over a term of 20 years, at a fixed interest rate of 8.99%.[14] Mendoza made various covenants under the contract, such as maintaining an escrow account with Debtor for payment of annual property taxes,[15] and keeping the property and improvements in good repair at his own expense.[16]  Debtor's covenants appear limited to delivery of possession of the property to Mendoza on or before February 10, 2020,[17] provision of hazard insurance at an annual rate of

---

[12] *Id*. at 3 ¶¶ 7, 8.
[13] First Bank Ex. 53.
[14] *Id*. at 1.
[15] *Id*. at 2 ¶ 5.
[16] *Id*. at 2 ¶ 4.
[17] *Id*. at 2 ¶ 3.

$598.44,[18] and delivery of "a good and sufficient GENERAL WARRANTY DEED conveying good and merchantable title" to Mendoza upon payment of the full purchase price.[19]

The Mendoza Property is among the Schedule A/B Properties in which Debtor has asserted fee simple ownership as of the Petition Date.[20] It is also listed among the Schedule G Properties, as "Contract for Deed; Contract to be ASSUMED" with the counterparty named as William Mendoza.[21] In an exhibit describing the proposed sale and estimated proceeds, Debtor describes the Mendoza Property as: having a market value of $160,000; generating "estimated proceeds" of $160,000; and having a payoff amount of the contract for deed of $52,859.21 as of April 22, 2026.[22]

*The Mounds Property*

No contract for deed related to the Mounds Property was provided to the Court for review. The Mounds Property is among the Schedule A/B Properties in which Debtor has asserted fee simple ownership as of the Petition Date.[23] It is also listed among the Schedule G Properties, as "Contract to be ASSUMED" with the counterparty named as Marias Juarez.[24] In an exhibit describing the proposed sale and estimated proceeds, Debtor describes the Mounds Property as:

---

[18] *Id*. at 2 ¶ 5.

[19] *Id*. at 3 ¶ 7 ("Upon payment in full of the purchase price and satisfaction of the terms and conditions set forth in this Contract, together with all interest and all monies due by virtue of this Contract, SELLER agrees to make, execute and deliver to BUYER a good and sufficient GENERAL WARRANTY DEED conveying good and merchantable title to said real property to BUYER, except for such liens and encumbrances, taxes or other charges as BUYER shall have allowed to accumulate or permitted to be placed thereon since the date of this Contract, and any and all costs, abstracting, fees and/or charges relating to the closing and/or transfer of the title shall be paid by BUYER.").

[20] ECF No. 55, at 7.

[21] *Id*. at 129 ¶ 2.98.

[22] Debtor's Ex. D-3(a), at 1, line 3.

[23] ECF No. 55, at 11.

[24] *Id*. at 122 ¶ 2.58.

having a market value of $650,000; generating "estimated proceeds" of $92,193.40; and having a payoff amount of the contract for deed of $182,165.39 as of April 22, 2026.[25]

*The Rodriguez Property*

On January 5, 2024, Debtor, as seller, and Juan Marco Antonio Rodriguez and Amie Kathlyn Luna Quezada, as buyers, "made and entered into" a contract for deed for the Rodriguez Property (the "Rodriguez Contract").[26] The contract price was $160,000, to be paid as a $16,000 downpayment, then regular monthly payments of $1,370.26 over a term of 30 years, at a fixed interest rate of 10.99%.[27] Other details of the Rodriguez Contract are unavailable because only the first page of the contract was included in the record.[28]

The Rodriguez Property is among the Schedule A/B Properties which Debtor has asserted fee simple ownership as of the Petition Date.[29] It is also listed among the Schedule G Properties, as "Contract for Deed; Contract to be ASSUMED" with the counterparty named as Juan Rodriguez.[30] No information is provided regarding the market value, estimated proceeds, or payoff amount remaining under the contract for deed.[31]

*The Hot Coffee Property*

On October 2, 2024, a "Notice of Interest" was filed in the Office of the Tulsa County Clerk, which gave notice that Hot Coffee Homes, LLC ("Hot Coffee") held an interest in the Hot Coffee Property based on a Contract for Deed executed by Debtor on July 21, 2024.[32] On

---

[25] Debtor's Ex. D-3(a), at 1, line 1.
[26] First Bank Ex. 67.
[27] *Id*. at 1 ¶ 2.
[28] *Id*.
[29] ECF No. 55, at 22.
[30] *Id*. at 127 ¶ 2.90.
[31] *See* Debtor's Ex. D-3(a).
[32] First Bank Ex. 70, at 18.

November 12, 2024, Hot Coffee, as mortgagor, granted a mortgage to Debtor, as mortgagee, to secure payment for a note dated November 4, 2024, related to the purchase of the Hot Coffee Property (the "Hot Coffee Mortgage").[33]  The Hot Coffee Mortgage was recorded in the Office of the Tulsa County Clerk on December 23, 2024.[34]  In addition, a UCC-1 form was filed in the Office of the Tulsa County Clerk on December 23, 2024, in which Hot Coffee granted a security interest in the Hot Coffee Property to Debtor.[35]

On November 15, 2024, Debtor, as grantor, executed a General Warranty Deed (the "Hot Coffee Deed") for the Hot Coffee Property to Hot Coffee, as grantee.[36] The Hot Coffee Deed was recorded in the Office of the Tulsa County Clerk on December 23, 2024.[37]  The Debtor made covenants in the Hot Coffee Deed that it was "lawfully seized of an absolute and indefeasible estate of inheritance in fee simple" in the property, and that "the same are free, clear, and discharged and unencumbered of and from all former and other grants, titles, charges, judgments, estates, taxes, assessments and encumbrances of whatsoever nature and kind, EXCEPT: Easements, building restrictions of record, and special assessments not yet due, setback lines, and zoning ordinances , if any of record."[38]  The Hot Coffee Deed also included warranty language that "Grantor will warrant and defend the same unto Grantee, its heirs, successors and assigns against said Grantor, its heirs, successors and assigns, and all and every person or persons whomsoever lawfully claiming, or to claim the same."[39]

The Hot Coffee Property is ***not*** among the Schedule A/B Properties which Debtor has

---

[33] *Id*. at 5.
[34] *Id*.
[35] *Id*. at 14
[36] *Id*. at 1.
[37] *Id*.
[38] *Id*.
[39] *Id*.

asserted fee simple ownership as of the Petition Date.[40] Instead, the property is listed in Schedule A/B as a "note receivable," with the current value of Debtor's interest as $800,000.[41]

***The First Bank Claim and Objections to Sale***

First Bank has filed a claim for $5,075,495.82 in this case, based on four separate commercial loans, indicating it holds an interest secured by mortgage liens on real estate.[42] First Bank claims to hold mortgages on the Mendoza, Mounds, and Hot Coffee Properties (the "First Bank Properties"), given to secure a note to First Bank executed by Debtor dated May 14, 2021.[43] According to First Bank, the loans are cross-collateralized across all property pledged by Debtor as security to First Bank.[44] Its mortgages include an assignment of rents, which defines "Rents" as "all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property."[45]

Despite acknowledging that each of the Proposed Sale Properties has previously been sold via contract for deed prior to the Petition Date to the respective Proposed Buyers, Debtor seeks Court approval for a "sale" pursuant to § 363(b) and seeks to force First Bank to accept a partial release of its mortgages on the First Bank Properties pursuant to § 363(f). Debtor proposes to pay the principal and non-default accrued interest portion of First Bank's claim from the proceeds of the sale, but challenges First Bank's right to recover attorney fees and costs and default interest. First Bank objects to the sale on several grounds, including confusion surrounding Debtor's interest in the Proposed Sale Properties and the propriety of using § 363 to remove First Bank's

---

[40] ECF No. 55.
[41] *Id.* at 21.
[42] Claim No. 48-1.
[43] First Bank Ex. 4 (note); Ex. 8 – Ex. 14.
[44] First Bank Ex. 8-1; Ex. 10-4.
[45] First Bank Ex. 8-11; Ex. 10-14.

interest in the First Bank Properties without its consent.  The United States Trustee joins First Bank in its objection as it relates to the Hot Coffee Property.[46]

To the extent that "Conclusions of Law" contain items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

### *What is Debtor attempting to sell?*

Before we reach the merits of *whether* the Court should approve the proposed sales, we must take a brief detour to understand *what* Debtor is attempting to sell.  The Motion describes the property to be sold as "all of the bankruptcy estate's right, title and interest" in the four parcels of property, "including Debtor's interest in contracts for deed affecting those properties."[47] Debtor did not offer any type of proposed documentation related to the proposed sales, such as purchase agreements, assignments, or deeds.

The property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[48]  Under the Bankruptcy Code,

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[49]

The existence and extent of such an interest is determined by state law, in this case the law of Oklahoma.[50]  Once that state law determination is made, however, we look to federal bankruptcy

---

[46] ECF No. 278.
[47] ECF No. 243, at 2 ¶ 4 (defining term omitted).
[48] § 541(a)(1).
[49] § 541(d).
[50] *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir. 1998).

law to resolve the extent to which that interest is property of the estate.[51]

***Property rights of a vendor in a contract for deed under Oklahoma law***

A *contract for deed*, sometimes referred to as an *installment land contract* or *land sales contract*, is defined as "[a] contract for the sale of land providing that the buyer will receive immediate possession of the land and pay the purchase price in installments over time, but that the seller will retain legal title until all payments are made."[52]   Under title 16, section 11A of the Oklahoma Statutes ("§ 11A"),

> All contracts for deed for purchase and sale of real property made for the purpose or with the intention of receiving the payment of money and made for the purpose of establishing an immediate and continuing right of possession of the described real property, whether such instruments be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall to that extent be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages. No foreclosure shall be initiated, nor shall the court allow such proceedings, unless the documents have been filed of record in the county clerk's office, and mortgage tax paid thereon, in the amount required for regular mortgage transactions.[53]

Section 11A codifies prior case law, which held that when a contract for the sale and purchase of real estate was duly executed, coupled with delivery of possession of the premises to the vendee (buyer) pursuant to the terms of the contract, equitable title to the real property passes to the vendee.[54] Under § 11A, the vendor (seller) retains bare legal title and an interest equivalent to a

---

[51] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (citing *Rine & Rine Auctioneers, Inc. v. Myers (In re Rine & Rine Auctioneers, Inc.)*, 74 F.3d 854, 857 (8th Cir. 1996)) (internal citation omitted).

[52] Contract, Black's Law Dictionary (12th ed. 2024) (installment land contract).

[53] Okla. Stat. tit. 16, § 11A (enacted effective April 26, 1976). *See In re Kampman Farms, Inc.*, 6 B.R. 653, 655 (Bankr. W.D. Okla. 1980) ("To the extent prior Oklahoma decisional law indicates to the contrary, the Oklahoma Legislature has now declared that contracts for deed shall be treated as mortgages.").

[54] *State Life Ins. Co. v. State ex rel. Kehn*, 1942 OK 385, ¶ 23, 192 Okla. 271, 135 P.2d 965, 968 ("[A] valid executory contract for the sale and purchase of real estate, coupled with possession of the premises in the vendee pursuant to the provisions thereof, passes to the vendee the equitable title to such real estate."); *McGinnity v. Kirk*, 2015 OK 73, 362 P.3d 186, 190 (same);

mortgage, which secures payment of the remaining sums under the contract.[55] Because the statute provides that a contract for deed is deemed to be a mortgage, it is subject to the same rules of foreclosure as a traditional mortgage.[56] By deeming a contract for deed to be a mortgage, a vendee acquires a right of redemption of the property upon any default under the contract, including nonpayment.[57] A vendor may not remove the vendee from possession through an action for forfeiture or ejectment, but must proceed through a mortgage foreclosure.[58]

---

*Hartless v. Cline*, 2023 OK CIV APP 30, 538 P.3d 187, 191 (same); *Resol. Tr. Corp. v. Sudderth*, 1993 OK CIV APP 53, 854 P.2d 375, 377-78 (same); *King v. Lunsford*, 1993 OK CIV APP 70, 852 P.2d 821, 823 (same).

[55] *In re Kampman Farms*, 6 B.R. at 655; *McGinnity*, 362 P.3d at 190 (first citing *Lucas v. Bishop*, 1998 OK 16, 956 P.2d 871, 873; then citing *Smith v. Frontier Fed. Sav. & Loan Ass'n*, 1982 OK 90, 649 P.2d 536, 538); *Hartless*, 538 P.3d at 191; *Sudderth*, 854 P.2d at 377.

[56] § 11A; *Smith*, 649 P.2d at 538 ("It is true that under § 11A, the contract for deed executed by the appellants must be regarded as a mortgage."); *Hartless*, 538 P.3d at 193.

[57] *See* Okla. Stat. tit. 42, § 18 ("Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."); *McGinnity*, 362 P.3d at 191-92 (first citing *Sooner Fed. Sav. & Loan Ass'n v. Okla. Cent. Credit Union*, 1989 OK 170, 790 P.2d 526, 528 n.4, then citing *Wilson v. Glancy*, 1995 OK 141, 913 P.2d 286, 290); *Coursey v. Fairchild*, 1967 OK 252, 436 P.2d 35, 38 ("Like equity, which regarded redemption As the creature of the law rather than of contract, our statute recognizes and confers a right to redeem as inherent in every mortgage. 42 O.S. 1961, § 18. A mortgagor cannot be divested of his title until his right to redeem is extinguished by foreclosure decree and sale held pursuant thereto.") (citations omitted); *Hartless*, 538 P.3d at 193 ("[B]ecause the Contract is considered a mortgage, Hartless had a right to redeem the property pursuant to 42 O.S. 2021, § 18."); 19 Okla. Op. Att'y Gen. 199, 1988 WL 424284, at *3 ("Construing the Constructive Mortgage Statute [§ 11A] broadly to 'promote justice,' 25 O.S. 1981, § 29, we conclude that the statute is intended to eliminate the unfair burdens imposed, under common law, on purchasers who used contracts for deed to finance their acquisitions of real property, and to place those purchasers on the same footing as those financing their acquisitions through purchase money mortgages.").

[58] *Lucas v. Bishop*, 956 P.2d at 873; *McGinnity*, 362 P.3d at 197 ("Because the contract for deed is considered as a mortgage for the purpose of possession, the right of the seller to possess the property based upon a breach of the contract is similar to the general provisions for liens with the right of possession being based upon a foreclosure of the lien: Oklahoma is 'a lien theory state' where [u]nder the lien theory, the mortgagee holds a lien on the property, and the mortgagor retains all incidents of ownership. The mortgagee must take some action before he is entitled to possession of the property.") (internal citations and quotations omitted); *Hartless*, 538 P.3d at 193 ("Cline was not entitled to pursue a claim for breach of contract or to quiet title upon the

11

In the same way a vendor can bequeath an interest in personal property to his estate, so can he sell or assign his rights under a contract for deed.  His interest is equivalent to that of a mortgagee with a lien on real property, held as security for the payment of the purchase-money. Under a contract for deed that provides for possession in the vendee, a vendor holds bare legal title to the property, which gives him the rights of a mortgagee to 1) receive payment under the terms of the contract until payment of the purchase-money; and 2) recover his unpaid purchase-money through a foreclosure action to enforce his mortgage lien if payment is not made.[59] To the extent a vendor's interest in a contact for deed could be assigned or transferred outside of bankruptcy, so it can be the subject of a sale under § 363(b).[60]

***Debtor's interest in the Proposed Sale Properties***

We must first note that the validity of the various contracts for deed is not before the Court;[61] nor is the validity or perfection of First Bank's liens against any real property or Debtor's

---

property but was constrained to seek foreclosure of her lien on the property and judgment against Hartless for sums remaining due under the Contract.").

[59] *McGinnity*, 362 P.3d at 197.

[60] *See id.* at 190 ("The effect of the assignment of the contract for deed to the McGinnitys was an assignment of a mortgage for the purpose of foreclosure proceedings.").

[61] The Court has not been asked to determine the validity of the various contracts for deed between each of the Proposed Buyers and the Debtor, and given the sparse evidentiary record, the Court is unable to make any such findings.

In briefing, some parties have suggested that language contained in the contracts for deed before the Court, such as "SELLER hereby agrees to sell and BUYERS hereby agree to buy," is dispositive, and operates as a *future* commitment, instead of a *present* commitment to sell and convey the subject property. The parties cite *C.R. Butterfield v. Trustees of the Johnny B. McCoy Revocable Living Trust*, 2024 OK CIV APP 2, 542 P.3d 877, and *Parks v. Classen Co.*, 156 Okla. 43 (1932), *aff'd on reh'g*, 1935 OK 991, 174 Okla. 237, 49 P.2d 1101, as support for the proposition that the contracts should be parsed for "magic words" to determine the timing of a transfer of ownership.  The parties fail to address *State Life Insurance Co. v. State ex rel. Kehn*, 1942 OK 385, 192 Okla. 271, 135 P.2d 965, an opinion of the Oklahoma Supreme Court, which holds that a valid executory contract for the sale and purchase of real estate, coupled with a delivery of possession of the premises to the vendee pursuant to the provisions of the contract, passes to the vendee the equitable title to such real estate.  In *Kehn*, the court held that if the contract as a whole shows an intention to convey a present equitable estate to the vendee, the

interest in other property.[62] We are only concerned here with determining the nature of Debtor's interest in the Proposed Sale Properties or related contracts for deed, which are assumed valid for the purposes of ruling on the Motion, and whether Debtor may utilize § 363(b) to sell such interests.

For simplicity, the Court will focus its discussion on the Mendoza Contract.[63] For purposes of ruling on the Motion, the Court finds the Mendoza Contract falls squarely under § 11A as a contract for deed for the sale of land, with possession held by Mendoza under the terms of the contract.[64] Mendoza became the equitable owner of the property on February 10, 2020, subject to

---

court will give it effect, *regardless of specific wording of conveyance. Id.* at 967 ¶ 15 ("It may be that a mere contract or provision in a contract agreeing to sell real estate at some future date is insufficient of itself to create a present equitable estate in the vendee. But, as in all contracts, the intention of the parties, especially the vendor, governs. If the contract as a whole shows that the intention was to convey a present equitable estate the courts will give effect to such intention regardless of the separate meaning of particular or isolated words. Greater regard will be given to the intention as shown by the entire agreement than to the separate meaning of particular words or expressions."). To the extent *Parks* suggests that certain "magic words" of conveyance control over the intent of the parties to the contract, such was roundly rejected by the court in *Kehn. Id.* at 968 ¶ 20 ("The holding in *Bradford v. Jones*, [1935 OK 193, 170 Okla. 636, 41 P.2d 857] *supra*, and certain other of our decisions, that an executory contract for the sale of real estate was not, of itself, sufficient to pass equitable title is not in accord with the overwhelming weight of authority. The general rule is that upon execution of an executory contract for the purchase and sale of land, made for a valuable consideration, the vendee acquires an equitable estate in the land subject simply to a lien in favor of the vendor as security for payment of the purchase price."). While the Court acknowledges that litigation of the validity or intent of the parties regarding the various contracts may be required, the Court will be guided by *Kehn*, and will treat the holdings in *Butterfield* and *Parks* as questionable. In its effort to "ascertain and apply the state law," a "federal court must follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (citations omitted). *See also* Kraettli Q. Epperson, A Contract for Deed Transfers Equitable Title to the Buyer (16 O.S. § 11A), 96 Okla. Bar J. 36 (Oct. 2025).

[62] The validity of First Bank's lien interest is at issue in other matters before this Court, but it is not relevant to—and was not raised in—the current matter.

[63] The exhibit of First Bank containing the Rodriguez Contract contained only one page. No contract involving the Mounds Property was offered.

[64] Despite conflicting information in Schedule A/B, Mr. Nguyen and Debtor's counsel have consistently referred to the contracts as "contracts for deed." At the Hearing, the Mendoza Contract was offered by First Bank as an exhibit without objection by Debtor.

1) the payment of the purchase price under the terms of the Mendoza Contract; and 2) any enforceable covenants under the contract. Debtor, on the other hand, as vendor, held bare legal title to the Mendoza Property on the Petition Date. Pursuant to § 11A, Debtor's interest in the Mendoza Property is deemed a mortgage interest, which it holds as security for the repayment of the purchase price. While the failure of Mendoza to honor any commitments under the Mendoza Contract will be considered a breach, Debtor's remedies, as vendor, will be limited to foreclosure of Mendoza's equitable interest in order to liquidate the property through a sheriff's sale.[65] As the vendor under the Mendoza Contract, Debtor may sell or transfer its right to repayment under the contract, which rights will include the responsibility to convey a clear title to Mendoza upon his fulfillment of the contract.

### Sale of estate assets pursuant to § 363(b)

We begin by summarizing the statutory framework that applies to the sale of estate assets. Section 363(b) of the Bankruptcy Code permits a trustee or debtor in possession[66] to "sell . . . property of the estate" outside its ordinary course of business, upon proper notice and court approval.[67]  Courts in this circuit apply the "business judgment" test to determine whether a sale under § 363(b) should be approved.[68] Under this standard, a trustee or debtor in possession seeking approval to sell property of the estate not in the ordinary course of business has the burden to show sound business reasons for the terms of the proposed sale.[69]  The factors for the Court to consider include:

---

[65] *See McGinnity*, 362 P.3d at 203.

[66] § 1107(a) (giving a debtor in possession the rights and powers of a trustee).

[67] § 363(b)(1).

[68] *In re Oklahoma Forge, LLC*, 671 B.R. 297, 304 (Bankr. N.D. Okla. 2025); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (citing *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir.1983)); *Allen v. Cohen*, 2014 WL 2118293, at *4 (D. Colo. May 21, 2014), *aff'd*, 607 F. App'x 840 (10th Cir. 2015) (unpublished) (adopting *In re Castre* test).

[69] *In re Oklahoma Forge*, 671 B.R. at 304.

14

    i.     any improper or bad motive;

    ii.    whether the price is fair and the negotiations or bidding occurred at arm's length; and

    iii.   whether the trustee followed adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest.[70]

The Court should evaluate the trustee's business judgment:

    i.     as to the propriety of the proposed sale of a debtor's assets;

    ii.    as to the preparation for and conduct of an auction under the chosen bidding procedures; and

    iii.   as to the highest and best bid received.[71]

### *No articulated business rationale for the Proposed Sale*

Debtor has not articulated any sound business rationale for the proposed use of § 363(b) to achieve what could just as easily be accomplished by allowing each Proposed Buyer to pay the remaining amount due under its contract or mortgage. Each of the Proposed Buyers in the present Motion are counterparties to a contract for deed or mortgage. There is no "third-party" offering to buy Debtor's interest under the contracts or mortgages, or to adopt Debtor's corresponding obligations. Debtor is attempting to force a round peg into a square hole by characterizing the transaction as a sale under § 363(b). Instead of simply allowing the Proposed Buyers to pay off their remaining obligations under their respective contracts or mortgages, Debtor has crafted an elaborate contrivance whereby the Proposed Buyers would purchase Debtor's contract rights, including legal title, to their properties; then, as owners of both sides of the contracts, the buyers would "own" both the equitable and legal titles, giving them a full fee simple estate in the property. While not technically impermissible, such a procedure seems unnecessarily complicated.

The Bankruptcy Code provides Debtor adequate tools to resolve its interests in contracts for deed without resorting to a sale under § 363(b). While Courts often tie themselves in knots over

---

[70] *Id.*

[71] *Id.*

15

the question of whether a contract for deed is executory for purposes of assumption or rejection under § 365,[72] we need not go down that particular rabbit hole here. If Debtor chooses to "assume" a contract for deed, then upon full payment of the purchase price under the contract, Debtor will honor its contractual and statutory commitments by rendering legal title to the buyer.  If Debtor instead chooses to "reject" a contract, the Code provides for the same result under § 365(i).[73]  In the alternative, if the Debtor's rights in the contract for deed are deemed a security interest (and not an executory contract), Debtor will be required to convey legal title to the buyer upon payment of the remaining amount due under the contract. All roads will lead to the same result, which is: buyer conveys the remaining purchase-money funds to Debtor, and Debtor conveys legal title to the buyer.  It is a solution as simple as it is elegant and obviates the need for a "sale" under § 363(b).

---

[72] *See e.g.*, *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471-73 (6th Cir. 1989) (land sale contract is executory within the meaning of § 365); *In re Streets & Beard Farm P'ship*, 882 F.2d 233, 235 (7th Cir. 1989) ("In our view, the delivery of a legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." (citing *In re Pacific Exp., Inc.*, 780 F.2d 1482, 1487 (9th Cir.1986))); *Kane v. Harpswell (In re Kane)*, 248 B.R. 216, 223-24 (1st Cir. BAP 2000), *aff'd*, 254 F.3d 325 (1st Cir. 2001) (an installment land sales contract is not an executory contract "if under applicable state law and the particular transaction, the contract is in essence a sale and financing device").

[73] Section 365(i) states:

> (i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.
> (2) If such purchaser remains in possession--
> (A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and
> (B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

For example, Debtor's records show that the Mendoza Contract has a payoff amount of $52,859.21 as of April 22, 2026. Under the terms of the contract, upon full payment of the purchase price and satisfaction of other terms and conditions, Debtor is **obligated** to "make, execute, and deliver to BUYER a good and sufficient GENERAL WARRANTY DEED conveying good and merchantable title."[74]  Failure of Debtor to do so will be a breach of the Mendoza Contract. Under state law, Debtor will also be **required** to file a release of his mortgage in the county land records.[75] Therefore, in order to obtain full legal title to the Mendoza Property, Mendoza need only proffer the remaining purchase-money due under the Mendoza Contract to Debtor. No purchase or sales transaction is required. This same logic applies equally to the Mounds Property and Rodriguez Property. Debtor has not articulated any business rationale that would require the use of § 363(b) to accomplish the execution of the pending contracts for deed and the conveyance of title to these contract counterparties.

With respect to the Hot Coffee Property, Debtor has already executed a general warranty

---

[74] First Bank Ex. 53, at 3 ¶ 7. Under Oklahoma law,

> A warranty deed made in substantial compliance with the provisions of this chapter, shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor, that at the time of making the deed he is legally seized of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all encumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same, and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives as if written at length in such deed.

Okla. Stat. tit. 16, § 19.

[75] Okla. Stat. tit. 46, § 15(A) ("Any mortgage or judgment lien on real estate shall be released by the holder of any such mortgage or judgment lien within thirty (30) days of the payment of the debt secured by the mortgage or judgment lien and the holder of the mortgage or judgment lien shall file the release of the mortgage or judgment lien with the county clerk where the mortgage or judgment lien is recorded.").

deed to Hot Coffee.  Under the terms of the Hot Coffee Mortgage,

1.  Upon full and final payment and performance of all of Mortgagor's Obligations, Mortgagee [Debtor] will release this Mortgage.

2.  Upon release, this Mortgage will be void.[76]

The Hot Coffee Mortgage defines the Mortgagor's Obligations to be the financial obligations for payment of Hot Coffee's loan and promissory note for the Hot Coffee Property.  Therefore, upon payment of the remaining obligations under the Hot Coffee Mortgage, Debtor will be required to release its lien on the property.  Beyond its mortgage lien interest, Debtor currently holds no real property interest related to the Hot Coffee Property.  Debtor admits as much.[77]  As such, the Court cannot find any business rationale for characterizing a garden-variety lien release as a sale of property.

### Application of § 363(f)

Despite no articulated business rationale for the use of § 363(b) to characterize these transactions as "sales," Debtor insists that it "needs" to use the § 363(b) sales process so it can take advantage of § 363(f). That subsection allows a debtor in possession to sell estate property under § 363(b) free and clear of any interest of other parties under certain specified circumstances.[78] Debtor has not been shy about its motivation to remove the interests of secured creditors, especially First Bank, from both the Proposed Sale Properties and Debtor's interests in the related contracts.[79]

---

[76] First Bank Ex. 70.

[77] ECF No. 243, at 3 ¶ 8 ("[The Hot Coffee Property] was sold pre-petition, but Debtor has retained a mortgage[.]"). *See In re Motors Liquidation Co.*, 590 B.R. 39, 55–56 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), and *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020) ("It is well established that '[a] pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal.'") (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir. 1929)).

[78] § 363(f).

[79] *See* First Bank Exs. 4, 8-10.  Depending on the history and facts of a particular piece of property, First Bank may have a secured interest in certain Proposed Sale Properties, or on Debtor's

Unfortunately for Debtor, the Court finds this is an inappropriate use of the statute.

Debtor does not indicate which paragraph of § 363(f) it relies on.  Of the five paragraphs that authorize a sale free and clear, four do not apply to this matter. Paragraph (1) does not apply because applicable law—Oklahoma real property law—does not permit a sale free and clear of a properly recorded mortgage interest, and indeed would preserve First Bank's lien despite the transfer.[80] Paragraph (2) is inapplicable as First Bank does not consent to the transfer free of its interest. Paragraph (4) applies only if the interest is in bona fide dispute. Although Debtor has indicated that it disputes portions of First Bank's claim, it has not argued that its secured interest, as a whole, is disputed.  Paragraph (5) only applies if First Bank could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for less than full payment of the debt secured by its lien.[81] Debtor has not identified any legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt.[82] That leaves us with paragraph (3).

Section 363(f)(3) states that a trustee or debtor in possession may extinguish a lien creditor's interest in property if proceeds from the sale of the asset exceed "the aggregate value of all liens" on the property.[83]  If such a "free and clear" sale is approved, any liens, although removed from the property, will attach to the sale proceeds.[84] The Court finds Debtor is not able to utilize § 363(f)(3) to force the removal of First Bank's liens from the First Bank Properties or Debtor's

---

interests under certain contracts for deed. The Court will not endeavor to sort out these factual issues here, except to note that they weigh heavily on Debtor's motivations for pursuing the Motion.

[80] *See* Okla. Stat. tit. 16, § 16 ("Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors.").

[81] *In re PW, LLC*, 391 B.R. 25, 42-43 (9th Cir. BAP 2008).

[82] *Id.*; *In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829 (N.D. Ill. 1993).

[83] *See* § 363(f)(3); *In re Terrace Chalet Apartments, Ltd.*, 159 B.R. at 825.

[84] *In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982).

related contract interests.  To the extent First Bank has a properly perfected secured interest in any of the First Bank Properties, those properties no longer belong to the Debtor. The Debtor cannot use § 363(b) to sell what it does not own, or to remove liens from property it sold prior to the Petition Date.  To the extent First Bank has a properly perfected secured interest in Debtor's contract rights for receipt of payment of the purchase-money, there has been no showing that the funds generated under the proposed sales would come close to exceeding the aggregate value of First Bank's lien, which is well over $5 million. Debtor has provided no argument, authority, or case law to support its entitlement to use § 363(f) in this manner.

The Court's determination that Debtor is unable to utilize § 363(f) in this matter gives further support to its conclusion that there is no business rationale for Debtor to treat the execution of the remaining contracts for deed with the Proposed Buyers as a sale of property under § 363(b).

## Conclusion

Based on the above, the Court finds Debtor has not met its burden to provide an adequate business rationale for any sale under § 363(b) of Debtor's interest in the Mendoza, Mounds, Rodriguez, or Hot Coffee Properties, or in contracts for deed or mortgages related thereto.  Because the Court has concluded it will not approve the sale as proposed, it will also reject Debtor's request to invoke § 363(f) to sell Debtor's interests free and clear of the interests of the secured creditors. Debtor has not made any showing that it is entitled to such relief.

Accordingly,

IT IS THEREFORE ORDERED that the Corrected Motion to Approve Sales of Debtor's Interest in Real Property of the Estate Free and Clear of All Liens, Claims, Encumbrances and Interests, filed by Nguyen Win Properties LLC, at ECF No. 243, is hereby DENIED.

Dated this 29th day of June, 2026.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

20