

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Jun 29, 2026

IN RE:

**NGUYEN WIN PROPERTIES LLC,**

**Debtor.**

**Case No. 25-11795-T
Chapter 11**

**ORDER DENYING MOTION TO APPROVE SALE
OF DEBTOR'S INTEREST IN REAL PROPERTY
(related to ECF No. 244)**

THIS MATTER comes before the Court pursuant to the Corrected Second Motion to Approve Sales of Debtor's Interest in Real Property of the Estate Free and Clear of All Liens, Claims, Encumbrances and Interests ("the Motion"),[1] filed by Nguyen Win Properties LLC (the "Debtor"); a Limited Objection,[2] filed by WeStreet Federal Credit Union ("WeStreet"); a Limited Objection,[3] filed by RC Fund III, LLC; an Objection,[4] filed by First Bank & Trust Co. ("First Bank"); an Objection,[5] filed by Ilene J. Lashinsky, the United States Trustee for Region 20; and a Limited Objection and Notice of Claimed Interest,[6] filed by Matthew Adcock. The Court held an evidentiary hearing on the Motion on May 18, 2026 (the "Hearing"). After receiving evidence and hearing argument, the Court took the Motion under advisement. The following "Findings of Fact" and "Conclusions of Law" are being made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to this contested matter pursuant to Federal Rule of Bankruptcy Procedure 9014.

---

[1] ECF No. 244.
[2] ECF No. 263.
[3] ECF No. 274.
[4] ECF No. 276.
[5] ECF No. 279.
[6] ECF No. 300.

## Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[7] Venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). Matters related to the sale of estate property are core proceedings as defined by 28 U.S.C. § 157(b)(2)(N).

## Findings of Fact

The above-referenced bankruptcy case was filed by Debtor, as a voluntary proceeding under Chapter 11 of the Bankruptcy Code on November 24, 2025 (the "Petition Date"). The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to §§ 1107 and 1108.  Debtor purports to own and operate a portfolio of residential real estate properties that generate income in the form of rental payments and proceeds as a vendor under contracts for deed.[8] Bao Quoc Mai Nguyen, also known as Paul Nguyen ("Mr. Nguyen") is the sole owner and manager/member of Debtor and the designated representative of Debtor as a debtor in possession.[9] According to its schedules, Debtor owns a fee simple interest in 123 parcels of real property ("Schedule A/B Properties").[10]  Debtor also represents that it holds an interest in 112 executory contracts or unexpired leases ("Schedule G Contracts"); 54 of those contracts indicate "Contract to be ASSUMED"; the remaining 58 contracts are described as "Contract for Deed; Contract to be ASSUMED."[11] All Schedule G Contracts indicate there are 0

---

[7] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

[8] ECF No. 266, at 1.

[9] Designation and Acceptance of Individual Responsible for Discharging Debtor's Duties, ECF No. 80, at 3.

[10] Schedule A/B, Part 9 ¶ 55 (Real Property), ECF No. 55, at 6-19.

[11] Schedule G, ECF No. 55, at 114-31.

months remaining in the contract or lease term.[12] The persons listed as counterparties to the Schedule G Contracts are presumed to be renters or buyers from Debtor under contracts for deed.

### *The proposed sale to KNZ*

In the Motion, Debtor seeks to sell Debtor's "right, title and interest, including contracts for deed" in 70 parcels of real property to KNZ Holdings, LLC ("KNZ"), an Oklahoma limited liability company, in a private sale outside its ordinary course of business pursuant to § 363(b) (the "Proposed KNZ Sale").[13] Debtor proposes to utilize § 363(f) to sell its interest in each of the properties "free and clear of any liens, claims, encumbrances and interests" of other parties in interest, with the "liens, claims, encumbrances and interests, to the extent valid" to be paid or to attach to the proceeds of the sale.[14]  The Proposed KNZ Sale consists of:

> all of the bankruptcy estate's right, title and interest, including contracts for deed, in certain property more completely described in Exhibits "A-1 through A-70" (the "KNZ Sale Properties").[15]

At the Hearing, counsel for Debtor described the sale as:

> The Contracts, again, are attached as, to Exhibit 1, and it's 70 different Contracts for Deed that have been identified and those Contracts for Deed that represent the debtor's interest in these properties. And it's these Contracts for Deed that would be sold to KNZ under the proposed sale. And I, we believe that under 363 the debtor has the ability to sell its interest in the properties free and clear of liens, which would include the sale of its, of its Contract for Deed interest.[16]

As part of the sale, Debtor asks the Court to find KNZ is a buyer in good faith under § 363(m).  Because of the size and complexity of the undertaking, Debtor expects the sale of all

---

[12] *Id.*

[13] Although Debtor suggests in the Motion that the proposed sale is made "in the ordinary course of its business," it does not explain why the Motion is brought under § 363(b), or why it would seek Court approval for such a sale. *See* § 363(c)(1).

[14] ECF No. 244, at 2 ¶ 6.

[15] ECF No. 244, at 2 ¶ 4 (defining term omitted).

[16] Transcript of Hearing, held May 18, 2026, ECF No. 318, at 46:13 – 46:21.

70 properties will be conducted in several tranches. Debtor suggests the Proposed KNZ Sale will generate total proceeds of $13,851,680.00, while the total secured claims asserted against the properties is $9,696,176.00, which would leave over $4 million in cash for Debtor going forward to pay unsecured creditors and allow Debtor to dismiss this case.[17]

***KNZ and Lauren Robertson***

KNZ was first registered as a limited liability company in Oklahoma on July 2, 2022.[18] Mr. Nguyen describes the business of KNZ as "real estate." KNZ's articles of organization were filed by Lauren A. Robertson ("Ms. Robertson").[19] After termination by the Oklahoma Secretary of State, Ms. Robertson filed an application for reinstatement with the Secretary of State on October 5, 2023, signing as "managing member."[20] On that same date, Ms. Robertson, signing as "manager," executed a change of address with the Secretary of State for both the resident service agent and principal place of business of KNZ to its current address of 2217 S Erie Pl, Tulsa, OK 74114.[21] After a second termination, Mr. Nguyen filed a reinstatement for KNZ with the Secretary of State on October 10, 2024, signing as "manager."[22] After yet a third termination, Ms. Robertson filed to reinstate KNZ with the Secretary of State on February 10, 2026, signing as "manager."[23] The Oklahoma Secretary of State issued a certificate of good standing for KNZ as of May 11, 2026.[24]

---

[17] ECF No. 244, at 3 ¶ 8; ECF No. 318, at 56 (direct examination testimony of Mr. Nguyen).
[18] First Bank Ex. No. 68-12.
[19] *Id*. at 68-9, 68-10.
[20] *Id*. at 68-7, 68-8.
[21] *Id*. at 68-6.
[22] *Id*. at 68-4.
[23] *Id*. at 68-2.
[24] *Id*. at 68-14, 68-15.

As of the Petition Date, KNZ was an entity wholly owned by Mr. Nguyen.[25] Prior to the Petition Date, KNZ was a party to at least one foreclosure action involving Debtor.[26] In that action Mr. Nguyen was described as the "owner" of KNZ.[27] After Debtor's bankruptcy case was filed, Mr. Nguyen contacted an entity named Certain Lending ("Certain Lending") about financing a transaction to purchase the Debtor's assets in order to pay off its existing creditors. According to Mr. Nguyen, Certain Lending was willing to loan funds for such a transaction, but only if the buyer was a non-debtor entity. To that end, Mr. Nguyen chose to use KNZ to act as the buyer in the sales transaction.

Ms. Robertson is employed as a loan assistant at Mabrey Bank, where Mr. Nguyen banks; he describes her as a friend he trusts that has "helped with a lot of the things within the business."[28] At the Hearing, Mr. Nguyen stated that Ms. Robertson had "helped" him with Debtor's business by giving him advice and providing services to Debtor as a notary. It was unclear whether the "advice" and notary services were in her capacity as a bank employee or in a private capacity, although Mr. Nguyen stated Ms. Robertson has never been directly compensated by Debtor for any services. Mr. Nguyen did not mention that Ms. Robertson had served as a manager or managing member of KNZ in the past, or that she had previously held an ownership interest in KNZ.[29] Nor did he mention that 2217 S Erie Pl, Tulsa, OK 74114, the address of the resident agent

---

[25] ECF No. 323, at 1; ECF No. 318, at 65:17 – 65:21.

[26] *KNZ Holdings LLC and Nguyen Win Properties, LLC v. Robert Tucker, et al.*, No. CJ-2023-2229 Tulsa County District Court. Judgment was granted to KNZ and Nguyen Win Properties on January 24, 2025. *See* ECF No. 204-2, at 1 (Exhibit A to Supplement to Motion to Employ Brian J. Rayment as counsel for Debtor).

[27] Brief and Statement in Support of Plaintiffs' Motion for Summary Judgment, CJ-2023-2229, filed Feb. 20, 2024, at p. 1 ¶ 1.

[28] ECF No. 318, at 66:4 – 66:8.

[29] The Oklahoma Limited Liability Company Act, Okla. Stat. tit. 18, § 2001(18), defines a "member" as "*a person with an ownership interest* in a limited liability company, with the rights and obligations specified under the Oklahoma Limited Liability Company Act and includes a

and principal place of business of KNZ since October 5, 2023, is owned by Debtor and under some form of lease to Ms. Robertson.[30]

In early January 2026, Mr. Nguyen transferred all of his interest in KNZ to Ms. Robertson for no consideration.[31] Mr. Nguyen now describes Ms. Robertson as the "owner" of KNZ.[32] No evidence, beyond Mr. Nguyen's testimony, was presented regarding the transfer of KNZ to Ms. Robertson. According to counsel for Debtor, Mr. Nguyen "transferred all of his interest in [KNZ], to [Ms.] Robertson in order to facilitate and [sic] sale and refinancing of Debtor's interests in the scheduled real property and to be able to pay the undisputed creditors' claims in full."[33] Ms. Robertson did not testify at the Hearing or offer any evidence regarding her knowledge, control, ownership, or understanding of KNZ, the Proposed KNZ Sale, or her involvement in negotiating the terms of the various purchase agreements with Debtor. No counsel appeared at the Hearing on behalf of Ms. Robertson or KNZ.

Even after the transfer of his interest in KNZ to Ms. Robertson, Mr. Nguyen continues to be in contact with Certain Lending regarding the purchase of Debtor's assets by KNZ.[34] Neither Debtor nor KNZ offered any kind of commitment letter or pre-approval letter from Certain Lending for the proposed financing. Nor did either party indicate the terms of the potential lending

---

member of the limited liability company generally and a member associated with a series of the limited liability company." (emphasis added).

[30] Schedule G, ECF No. 55, at 127.

[31] ECF No. 323, at 1-2; ECF No. 318, at 65:22 – 66:2.

[32] ECF No. 318, at 54:17 – 54:18.

[33] ECF No. 323, at 1-2. *See also* ECF No. 318, at 11:11 – 11:14 ("[Mr. Nguyen] transferred his interest in KNZ to Lauren Robertson for the sole purpose of accomplishing these sales and obtaining the funds necessary to pay off the creditors.").

[34] Mr. Nguyen testified he had been in contact with "the Lender" as recently as the day before the Hearing. *See* ECF No. 318, at 74:4 – 74:6.

arrangement, including what kind of security or guarantees the lender would require as part of the transaction.

### The Steed Contract

Attached to the Motion is a proposed "Real Estate Purchase Agreement" for each of the 70 KNZ Sale Properties.[35] The Court will not endeavor to parse each of these agreements, but will use the first exhibit, labeled "Exhibit A-1," as an example of the various issues presented in this case. Exhibit A-1 is a Real Estate Purchase Agreement (the "KNZ Purchase Agreement"), in which Debtor has agreed to sell and KNZ has agreed to purchase a single piece of residential real property (the "Steed Property").[36] The purchase price of the property is $108,000.[37] Seller is required to "convey title by Special Warranty Deed, free and clear of all liens and encumbrances except those approved by the Bankruptcy Court."[38] Regarding the transfer of possession of the property, the KNZ Purchase Agreement provides: "Possession shall transfer to Buyer upon closing unless otherwise agreed in writing."[39] The KNZ Purchase Agreement is executed by Mr. Nguyen, as manager of Debtor, and Ms. Robertson, as "authorized representative" of KNZ.

On August 19, 2019, Debtor, as seller, and Charles Marvin & Christine Steed (the "Steeds"), as buyers, "made and entered into" a contract for deed for the Steed Property (the "Steed Contract").[40] The contract price was $96,000, to be paid as $4,000 downpayment, then regular monthly payments of $800.58 over a term of 30 years, at a fixed interest rate of 9.9%.[41] The

---

[35] ECF Nos. 244-1 to -70.
[36] ECF No. 244-1. The Steed Property is located at 71 N. Florence Ave., Tulsa, OK.
[37] *Id*. at 1 ¶ 2.
[38] *Id*. at ¶ 5.
[39] *Id*. at ¶ 7.
[40] First Bank Ex. 23. The Steed Contract was executed by the Steeds on May 25, 2019, and on the 25th of an indecipherable month in 2019 by Mr. Nguyen, as manager of Debtor.
[41] *Id*. at 1.

Steeds/buyers made various covenants under the contract, such as maintaining insurance on the property,[42] and keeping the property and improvements in good repair at their own expense.[43] Debtor's/seller's covenants appear limited to delivery of possession of the property to the Steeds on or before October 1, 2019,[44] and delivery of a General Warranty Deed to the Steeds upon payment of the full purchase price.[45] Among the provisions, the Steeds/buyers agreed to grant Debtor a "right of power of sale" pursuant to the Oklahoma Power of Sale Mortgage Foreclosure Act,[46] and included a notice that stated:

> A POWER OF SALE HAS BEEN GRANTED IN THIS CONTRACT FOR DEED. A POWER OF SALE MAY ALLOW SELLER TO TAKE THE CONTRACTED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY BUYERS UNDER THIS CONTRACT FOR DEED.[47]

The Steed Contract was notarized by Ms. Robertson, although her signature indicates that a person named Jordan Goree appeared before her as the buyer, and does not mention either of the Steeds.[48]

The Steed Property is among the Schedule A/B Properties in which Debtor has asserted fee simple ownership as of the Petition Date.[49]  It is also listed among the Schedule G Contracts, as a "Contract for Deed; Contract to be ASSUMED" with the counterparty named as Charles Steed.[50] The Steed Property is among the properties claimed by First Bank as security for its loan to Debtor.[51]  In an exhibit describing the proposed sale and estimated proceeds, Debtor describes the

---

[42] *Id.* at 2 ¶ 5.
[43] *Id.* at ¶ 4.
[44] *Id.* at ¶ 3.
[45] *Id.* at ¶ 7.
[46] *Id.* at 4 ¶ 11. *See* Okla. Stat. tit. 46, § 40.
[47] First Bank Ex. 23, at 4 ¶ 11.
[48] *Id.* at 5.
[49] ECF No. 55, at 7.
[50] *Id.* at 129 ¶ 2.98.
[51] First Bank Ex. 21, at 1.

Steed Property as: having a market value of $100,000; generating "estimated proceeds" of $70,000; and having a payoff amount of the contract for deed of $86,346.82.[52]

### Objections to the Motion

To date, Debtor's interest in most or all of the KNZ Sale Properties is encumbered in some way by one of three secured creditors. RC Fund III, LLC objects to the Proposed KNZ Sale based on a claim filed by Rain City Capital, LLC for $184,950.00, earning interest at 24%, supported by a mortgage secured by real property located at 4014 South 94th East Avenue, Tulsa OK.[53] RC Fund III, LLC indicates it will consent to the sale under § 363(f)(2) only if its claim is paid in full at closing. Similarly, WeStreet objects to the Proposed KNZ Sale based on two claims, for $891,094.24 plus interest and $468,909.30 plus interest, secured by 11 of the KNZ Sale Properties.[54] WeStreet indicates it will consent to the sale under § 363(f)(2) only if its claim is paid in full at closing.

First Bank asserts a claim against Debtor for $5,075,495.82.[55] First Bank asserts an interest in many of the KNZ Sale Properties based on four separate loans made to Debtor, which are secured by Debtor's interest in the properties.[56] Mr. Nguyen, in his personal capacity, executed at least four separate commercial guaranties to First Bank related to Debtor's indebtedness.[57] Debtor's interest in the Steed Property is included in loan number 1393, which is dated May 14,

---

[52] Debtor's Ex. D-3(a), at 2, line 44.

[53] ECF No. 274; Claim No. 40-1.

[54] ECF No. 263; Claim Nos. 10-1 & 11-1.

[55] Claim No. 48-1.

[56] *Id*. pt. 2. The loans are dated March 4, 2021, May 14, 2021, June 25, 2021, and October 16, 2023. First Bank Ex. 2–5.

[57] First Bank Ex. 7-10, admitted at hearing held January 5, 2026, regarding Motion of First Bank & Trust Company For Relief From the Automatic Stay, For Abandonment of Property, Waiver of 4001(a)(3), ECF No. 120.

2021.[58] In the Motion, Debtor proposes to pay the principal and non-default accrued interest portion of First Bank's claim from the proceeds of the Proposed KNZ Sale, but challenges First Bank's right to recover attorney fees and costs and default interest. First Bank objects to the sale on several grounds, including confusion surrounding Debtor's interest in the KNZ Sale Properties and the propriety of using § 363 to remove First Bank's interest in the properties without its consent.  Both First Bank and the United States Trustee raise the issue of the insider nature of the relationship between Debtor and KNZ, and both question the good faith of the proposed sale.

To the extent that "Conclusions of Law" contain items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

### *What is Debtor attempting to sell?*

Before we reach the merits of *whether* the Court should approve the Proposed KNZ Sale, we must take a brief detour to understand *what* Debtor is attempting to sell.  The Motion describes the property to be sold as "all of the bankruptcy estate's right, title and interest, including contracts for deed" in 70 parcels of real property.[59]  The KNZ Purchase Agreement does not mention any interest in contracts for deed, but appears to describe a purchase and sale of real property, with conveyance to be accomplished through a "Special Warranty Deed."[60]

The property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[61]  Under the Bankruptcy Code,

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest,

---

[58] First Bank Ex. 1.
[59] ECF No. 244, at 2 ¶ 4 (defining term omitted).
[60] ECF No. 244-1, at 1.
[61] § 541(a)(1).

> becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[62]

The existence and extent of such an interest is determined by state law, in this case the law of Oklahoma.[63]  Once that state law determination is made, however, we look to federal bankruptcy law to resolve the extent to which that interest is property of the estate.[64]

### *Property rights of a vendor in a contract for deed under Oklahoma law*

A *contract for deed*, sometimes referred to as an *installment land contract* or *land sales contract*, is defined as "[a] contract for the sale of land providing that the buyer will receive immediate possession of the land and pay the purchase price in installments over time, but that the seller will retain legal title until all payments are made."[65]  Under title 16, section 11A of the Oklahoma Statutes ("§ 11A"),

> All contracts for deed for purchase and sale of real property made for the purpose or with the intention of receiving the payment of money and made for the purpose of establishing an immediate and continuing right of possession of the described real property, whether such instruments be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall to that extent be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages. No foreclosure shall be initiated, nor shall the court allow such proceedings, unless the documents have been filed of record in the county clerk's office, and mortgage tax paid thereon, in the amount required for regular mortgage transactions.[66]

Section 11A codifies prior case law, which held that when a contract for the sale and purchase of

---

[62] § 541(d).

[63] *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir. 1998).

[64] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (citing *Rine & Rine Auctioneers, Inc. v. Myers (In re Rine & Rine Auctioneers, Inc.)*, 74 F.3d 854, 857 (8th Cir. 1996)) (internal citation omitted).

[65] Contract, Black's Law Dictionary (12th ed. 2024) (installment land contract).

[66] Okla. Stat. tit. 16, § 11A (enacted effective April 26, 1976). *See In re Kampman Farms, Inc.*, 6 B.R. 653, 655 (Bankr. W.D. Okla. 1980) ("To the extent prior Oklahoma decisional law indicates to the contrary, the Oklahoma Legislature has now declared that contracts for deed shall be treated as mortgages.").

real estate was duly executed, coupled with delivery of possession of the premises to the vendee (buyer) pursuant to the terms of the contract, equitable title to the real property passes to the vendee.[67] Under § 11A, the vendor (seller) retains bare legal title and an interest equivalent to a mortgage, which secures payment of the remaining sums under the contract.[68] Because the statute provides that a contract for deed is deemed to be a mortgage, it is subject to the same rules of foreclosure as a traditional mortgage.[69] By deeming a contract for deed to be a mortgage, a vendee acquires a right of redemption of the property upon any default under the contract, including nonpayment.[70] A vendor may not remove the vendee from possession through an action for

---

[67] *State Life Ins. Co. v. State ex rel. Kehn*, 1942 OK 385, ¶ 23, 192 Okla. 271, 135 P.2d 965, 968 ("[A] valid executory contract for the sale and purchase of real estate, coupled with possession of the premises in the vendee pursuant to the provisions thereof, passes to the vendee the equitable title to such real estate."); *McGinnity v. Kirk*, 2015 OK 73, 362 P.3d 186, 190 (same); *Hartless v. Cline*, 2023 OK CIV APP 30, 538 P.3d 187, 191 (same); *Resol. Tr. Corp. v. Sudderth*, 1993 OK CIV APP 53, 854 P.2d 375, 377-78 (same); *King v. Lunsford*, 1993 OK CIV APP 70, 852 P.2d 821, 823 (same).

[68] *In re Kampman Farms*, 6 B.R. at 655; *McGinnity*, 362 P.3d at 190 (first citing *Lucas v. Bishop*, 1998 OK 16, 956 P.2d 871, 873; then citing *Smith v. Frontier Fed. Sav. & Loan Ass'n*, 1982 OK 90, 649 P.2d 536, 538); *Hartless*, 538 P.3d at 191; *Sudderth*, 854 P.2d at 377.

[69] § 11A; *Smith*, 649 P.2d at 538 ("It is true that under § 11A, the contract for deed executed by the appellants must be regarded as a mortgage."); *Hartless*, 538 P.3d at 193.

[70] *See* Okla. Stat. tit. 42, § 18 ("Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."); *McGinnity*, 362 P.3d at 191-92 (first citing *Sooner Fed. Sav. & Loan Ass'n v. Okla. Cent. Credit Union*, 1989 OK 170, 790 P.2d 526, 528 n.4, then citing *Wilson v. Glancy*, 1995 OK 141, 913 P.2d 286, 290); *Coursey v. Fairchild*, 1967 OK 252, 436 P.2d 35, 38 ("Like equity, which regarded redemption As the creature of the law rather than of contract, our statute recognizes and confers a right to redeem as inherent in every mortgage. 42 O.S. 1961, § 18. A mortgagor cannot be divested of his title until his right to redeem is extinguished by foreclosure decree and sale held pursuant thereto.") (citations omitted); *Hartless*, 538 P.3d at 193 ("[B]ecause the Contract is considered a mortgage, Hartless had a right to redeem the property pursuant to 42 O.S. 2021, § 18."); 19 Okla. Op. Att'y Gen. 199, 1988 WL 424284, at *3 ("Construing the Constructive Mortgage Statute [§ 11A] broadly to 'promote justice,' 25 O.S. 1981, § 29, we conclude that the statute is intended to eliminate the unfair burdens imposed, under common law, on purchasers who used contracts for deed to finance their acquisitions of real property, and to place those purchasers on the same footing as those financing their acquisitions through purchase money mortgages.").

forfeiture or ejectment, but must proceed through a mortgage foreclosure.[71]

In the same way a vendor can bequeath an interest in personal property to his estate, so can he sell or assign his rights under a contract for deed. His interest is equivalent to that of a mortgagee with a lien on real property, held as security for the payment of the purchase-money.   Under a contract for deed that provides for possession in the vendee, a vendor holds bare legal title to the property, which gives him the rights of a mortgagee to 1) receive payment under the terms of the contract until payment of the purchase-money; and 2) recover his unpaid purchase-money through a foreclosure action to enforce his mortgage lien if payment is not made.[72] To the extent a vendor's interest in a contract for deed could be assigned or transferred outside of bankruptcy, so it can be the subject of a sale under § 363(b).[73]

***Debtor holds bare legal title and a mortgage interest in properties transferred by contract for deed***

Turning to our example of the Steed Property, assuming it is otherwise valid,[74] the Court

---

[71] *Lucas v. Bishop*, 956 P.2d at 873;  *McGinnity*, 362 P.3d at 197 ("Because the contract for deed is considered as a mortgage for the purpose of possession, the right of the seller to possess the property based upon a breach of the contract is similar to the general provisions for liens with the right of possession being based upon a foreclosure of the lien: Oklahoma is 'a lien theory state' where [u]nder the lien theory, the mortgagee holds a lien on the property, and the mortgagor retains all incidents of ownership. The mortgagee must take some action before he is entitled to possession of the property.") (internal citations and quotations omitted); *Hartless*, 538 P.3d at 193 ("Cline was not entitled to pursue a claim for breach of contract or to quiet title upon the property but was constrained to seek foreclosure of her lien on the property and judgment against Hartless for sums remaining due under the Contract.").

[72] *McGinnity*, 362 P.3d at 197.

[73] *See id.* at 190 ("The effect of the assignment of the contract for deed to the McGinnitys was an assignment of a mortgage for the purpose of foreclosure proceedings.").

[74] No parties have challenged the validity of the Steed Contract, and the Court has had no reason to litigate the issue of validity.  For purposes of this Order, the Court will assume the Steed Contract is valid and enforceable under Oklahoma law as a contract for deed.  To the extent that assumption is later challenged, issues of validity of the Steed Contract will remain open for adjudication.

In briefing, some parties have suggested that language contained in the contracts for deed before the Court, such as "SELLER hereby agrees to sell and BUYERS hereby agree to buy," is

finds the Steed Contract falls squarely under § 11A as a contract for deed for the sale of land, with possession held by the Steeds under the terms of the contract. The Steeds became the equitable owners of the property, subject to 1) the payment of the purchase price under the terms of the Steed Contract; and 2) any enforceable covenants under the contract. Failure of the Steeds to honor either of those commitments will be considered a breach of contract, but, pursuant to § 11A, they hold a right of redemption until the Debtor, as vendor, acts to foreclose their interest through a sheriff's

---

dispositive, and operates as a *future* commitment, instead of a *present* commitment to sell and convey the subject property. The parties cite *C.R. Butterfield v. Trustees of the Johnny B. McCoy Revocable Living Trust*, 2024 OK CIV APP 2, 542 P.3d 877, and *Parks v. Classen Co.*, 156 Okla. 43 (1932), *aff'd on reh'g*, 1935 OK 991, 174 Okla. 237, 49 P.2d 1101, as support for the proposition that the contracts should be parsed for "magic words" to determine the timing of a transfer of ownership.  The parties fail to address *State Life Insurance Co. v. State ex rel. Kehn*, 1942 OK 385, 192 Okla. 271, 135 P.2d 965, an opinion of the Oklahoma Supreme Court, which holds that a valid executory contract for the sale and purchase of real estate, coupled with a delivery of possession of the premises to the vendee pursuant to the provisions of the contract, passes to the vendee the equitable title to such real estate.  In *Kehn*, the court held that if the contract as a whole shows an intention to convey a present equitable estate to the vendee, the court will give it effect, *regardless of specific wording of conveyance.  Id*. at 967 ¶ 15 ("It may be that a mere contract or provision in a contract agreeing to sell real estate at some future date is insufficient of itself to create a present equitable estate in the vendee. But, as in all contracts, the intention of the parties, especially the vendor, governs. If the contract as a whole shows that the intention was to convey a present equitable estate the courts will give effect to such intention regardless of the separate meaning of particular or isolated words. Greater regard will be given to the intention as shown by the entire agreement than to the separate meaning of particular words or expressions."). To the extent *Parks* suggests that certain "magic words" of conveyance control over the intent of the parties to the contract, such was roundly rejected by the court in *Kehn.  Id*. at 968 ¶ 20 ("The holding in *Bradford v. Jones*, [1935 OK 193, 170 Okla. 636, 41 P.2d 857] *supra*, and certain other of our decisions, that an executory contract for the sale of real estate was not, of itself, sufficient to pass equitable title is not in accord with the overwhelming weight of authority. The general rule is that upon execution of an executory contract for the purchase and sale of land, made for a valuable consideration, the vendee acquires an equitable estate in the land subject simply to a lien in favor of the vendor as security for payment of the purchase price.").  While the Court acknowledges that litigation of the validity or intent of the parties regarding the various contracts may be required, the Court will be guided by *Kehn*, and will treat the holdings in *Butterfield* and *Parks* as questionable. In its effort to "ascertain and apply the state law," a "federal court must follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (citations omitted). *See also* Kraettli Q. Epperson, A Contract for Deed Transfers Equitable Title to the Buyer (16 O.S. § 11A), 96 Okla. Bar J. 36 (Oct. 2025).

sale.[75] The Steed Contract includes terms suggesting Debtor may exercise a power of sale and retain possession of the property without going through the foreclosure process.[76] Such terms are likely unenforceable.[77]  For example, to the extent the Steed Property is the Steed's homestead, Debtor may not automatically enforce its power of sale under the Steed Contract, and must comply with certain notice provisions giving the Steeds an option to elect judicial foreclosure.[78]

Debtor's interest in each of the KNZ Sale Properties appears to be encumbered by a secured creditor.[79] Whether a secured creditor's interest attached to the real property or the Debtor's contract rights under a contract for deed likely depends on the factual history of each of the KNZ Sale Properties. A discussion of the secured creditors' interests in the separate KNZ Sale Properties is best left for another proceeding, where those issues can be thoroughly briefed and litigated.

The preceding discussion leads the Court to conclude that for KNZ Sale Properties, such as the Steed Property, that were transferred by Debtor under a contract for deed prior to the Petition Date, the contract buyers are the equitable owners of those properties.[80]  Debtor holds bare legal

---

[75] *See id.* at 203.

[76] *See supra* note 47

[77] *McGinnity*, 362 P.3d at 203 ("[A]s we have explained, 16 O.S. § 11A was part of this contract and the McGinnitys were required to foreclose the Kirks' interest based upon the contract as a mortgage."); *Coursey v. Fairchild*, 436 P.2d at 38 ("The power of redemption which our statute confers upon mortgagor is regarded as a substantive property right. By force of 42 O.S. 1961, § 11, All contracts in restraint of mortgagor's right to redeem the land from a lien are void as contrary to public policy.") (citations omitted); *White v. No. One Brickman Process Ref. Co.*, 1925 OK 148, ¶ 0, 109 Okla. 19, 234 P. 189 ("The vendor's remedy against one in possession who has defaulted in payments is by an equitable action in the district court. Such vendor cannot take possession of the premises over the protest of the purchaser in possession, and a possession so taken is wrongful.") (syllabus).

[78] Okla. Stat. tit. 46, § 43(A)(2).

[79] This is not meant to be a determination of the parties' rights in the KNZ Sale Properties. The Court merely observes that the purpose of the Motion appears to be to strip the various secured creditors of their interests in those properties.

[80] The Court acknowledges that not all of the KNZ Sale Properties had been sold under contract for deed prior to the Petition Date.  For those non-contract properties, Debtor holds both legal and equitable title, which are transferrable as a real property interest.

title to the subject property, with the right to collect the remaining purchase-money under the contract and the equivalent of a mortgage interest allowing the initiation of foreclosure proceedings in the event of nonpayment. To the extent Debtor holds the interest of a mortgagee in the properties, it may sell or convey that interest.

### *Sale of estate assets pursuant to § 363(b)*

We begin by summarizing the statutory framework that applies to the sale of estate assets. Section 363(b) of the Bankruptcy Code permits a trustee or debtor in possession[81] to "sell . . . property of the estate" outside its ordinary course of business, upon proper notice and court approval.[82]  Courts in this circuit apply the "business judgment" test to determine whether a sale under § 363(b) should be approved.[83] Under this standard, a trustee or debtor in possession seeking approval to sell property of the estate not in the ordinary course of business has the burden to show sound business reasons for the terms of the proposed sale.[84]  Where a proposed sale would benefit an insider of a debtor, the court is required to apply *heightened scrutiny* to the fairness of the value provided by the sale and the good faith of the parties in executing the transaction.[85]  Such heightened scrutiny is required because sales to insiders "are rife with the possibility of abuse."[86] Under a heightened scrutiny test, the court must assess the *bona fides* of the transaction between a

---

[81] § 1107(a) (giving a debtor in possession the rights and powers of a trustee).

[82] § 363(b)(1).

[83] *In re Oklahoma Forge, LLC*, 671 B.R. 297, 304 (Bankr. N.D. Okla. 2025); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004) (citing *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir.1983)); *Allen v. Cohen*, 2014 WL 2118293, at *4 (D. Colo. May 21, 2014), *aff'd*, 607 F. App'x 840 (10th Cir. 2015) (unpublished) (adopting *In re Castre* test).

[84] *In re Oklahoma Forge*, 671 B.R. at 304.

[85] *Id*. at 305; *In re Fam. Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015); *In re Enron Corp.*, 335 B.R. 22, 28 (S.D.N.Y. 2005); *In re Vanderbilt Mins., LLC*, No. 26-60110, 2026 WL 1138767, at *6 (Bankr. N.D.N.Y. Apr. 27, 2026).

[86] *In re Wingspread Corp.*, 92 B.R. 87, 93 (Bankr. S.D.N.Y. 1988); *In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 768 (Bankr. S.D.N.Y. 2020).

debtor and an insider of the debtor.[87] Courts are concerned with the integrity of the bankruptcy

sale process and the entire fairness of the transaction at issue.[88]  While courts do not *per se* ban

sales to insiders, they must review the sales for wrongdoing or impropriety.  It is the "integrity of

the sale" that is the focus of the inquiry.[89]  Under the heightened scrutiny standard, the insider

bears the burden of showing the "entire fairness" of the transaction at issue.[90] In this case, to

demonstrate the sale satisfies the "entire fairness" standard, Debtor must show the Proposed KNZ

Sale results from fair dealing and reflects a fair price.[91]

***Proposed KNZ Sale is subject to heightened scrutiny***

To determine the proper level of scrutiny to be applied to the Proposed KNZ Sale, we must

first ask whether KNZ is an insider of Debtor. The term "insider" under the Bankruptcy Code is

defined at § 101(31).  Where the debtor is a corporation, the term insider "includes" a:

   (i) director of the debtor;

   (ii) officer of the debtor;

   (iii) person in control of the debtor;

   (iv) partnership in which the debtor is a general partner;

   (v) general partner of the debtor; or

   (vi) relative of a general partner, director, officer, or person in control of the debtor[.][92]

Because the definition uses the nonlimiting term "includes," it is intended to be illustrative rather

---

[87] *In re Latam Airlines*, 620 B.R. at 769.

[88] *Id.*; *In re Wingspread Corp.*, 92 B.R. at 92.

[89] *In re Russo*, 762 F.2d 239, 243 (2d Cir. 1985) ("The integrity of the sale is the issue to be addressed"); *In re Wingspread Corp.*, 92 B.R. at 93.

[90] *In re Latam Airlines*, 620 B.R. at 769.

[91] *Id.* at 771.

[92] § 101(31)(B).

than exhaustive.[93] Legislative history suggests that, in addition to the individuals and entities actually named, i.e., "statutory insiders," the term also encompasses anyone with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor,"[94] i.e., "non-statutory insiders."[95]

Courts in the Tenth Circuit apply a two-prong test to determine whether a person or entity qualifies as a non-statutory insider.[96]  Courts must consider: (1) the closeness of the relationship between the parties, including the presence or absence of control of the debtor[97] and whether the entity has access to inside information; *and* (2) whether the transaction was negotiated at arm's length.[98]  An arm's-length transaction is "[a] transaction in good faith in the ordinary course of business by parties with independent interests . . . .The standard under which unrelated parties,

---

[93] § 102(3).  *See U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 390 (2018); *In re U.S. Med., Inc.*, 531 F.3d 1272, 1276 (10th Cir. 2008); *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996); *In re Adam Aircraft Indus., Inc.*, 493 B.R. 834, 841 (Bankr. D. Colo. 2013), *aff'd*, 510 B.R. 342 (10th Cir. BAP 2014), *aff'd*, 805 F.3d 888 (10th Cir. 2015).

[94] *In re U.S. Med.*, 531 F.3d at 1277 (citing S. Rep. No. 95-989, at 25 (1978), as *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810).

[95] *U.S. Bank Nat'l Ass'n*, 583 U.S. at 389; *In re U.S. Med.*, 531 F.3d at 1276. *See also In re Krehl*, 86 F.3d at 742 ("The question under section 101(31) is whether the historical facts found by the bankruptcy court meet the Code's open-ended definition of an insider.").

[96] *In re U.S. Med.*, 531 F.3d at 1276.  The test applied in the Tenth Circuit is functionally identical to the test applied by the Ninth Circuit in *U.S. Bank Nat'l Ass'n*, 531 U.S. at 387 ("According to the court, a creditor qualifies as a non-statutory insider if two conditions are met: '(1) the closeness of its relationship with the debtor is comparable to that of the enumerated insider classifications in [the Code], and (2) the relevant transaction is negotiated at less than arm's length.'") (citing *In re Village at Lakeridge, LLC*, 814 F.3d 993, 1001 (2016)).  In a concurrence, Justice Sotomayor roundly criticized this test, but acknowledged that the correctness of the test was not before the Court. *Id*. at 400. This Court is cognizant of the concerns raised by Justice Sotomayor, but is bound to apply the test as set forth in *In re U.S. Medical*.  The parties have not proposed an alternative test, and the Court takes no position on whether a different test would render a different result in this case.

[97] Courts stop short of requiring "actual control," because such a person would qualify as a statutory insider.  *In re U.S. Med.*, 531 F.3d at 1277 n.5.

[98] *Id*. at 1277 (citing *Krehl*, 86 F.3d at 742).

18

each acting in his or her own best interest, would carry out a particular transaction."[99]

Under the first prong, the Court finds the relationship between KNZ and Debtor is comparable to that of the enumerated insider classifications in § 101(31)(B). Before Mr. Nguyen ceded his interest in KNZ to Ms. Robertson, he was its 100% owner.  If Mr. Nguyen had retained his interest in KNZ, his insider status of Debtor, ability to control both Debtor and KNZ, and intimate knowledge of both entities would lead the Court to conclude that KNZ is sufficiently close to Debtor to fall under the definition of insider. Nothing about the transfer of Mr. Nguyen's interest to Ms. Robertson causes the Court to reach a different conclusion.

Mr. Nguyen testified that he arranged for Certain Lending to provide financing for the Proposed KNZ Sale. Upon learning Certain Lending would only loan to a non-debtor entity, Mr. Nguyen set the plan in motion.  First, he selected KNZ to serve as the buyer of Debtor's assets. Then, Mr. Nguyen transferred all his "ownership" of KNZ to Ms. Robertson for no consideration. Third, he arranged for KNZ to borrow funds from Certain Lending and to serve as the buyer of Debtor's assets under the Proposed KNZ Sale. Ms. Robertson did not testify at the hearing, so the Court has no information regarding her involvement or understanding of the sale, the sale process, or the acquisition of financing from Certain Lending. Mr. Nguyen testified that he personally was in contact with Certain Lending about the financing arrangement as recently as the day before the Hearing. All available evidence leads the Court to conclude that, while KNZ may be under the legal ownership of Ms. Robertson, it remains fully under the control of Mr. Nguyen. Given Mr. Nguyen's status as a statutory insider, the Court easily finds the relationship between Debtor and KNZ is sufficiently close for KNZ to meet the first prong of the test as a non-statutory insider of Debtor.

---

[99] *Id*. at 1277 n.4 (quoting Black's Law Dictionary 109 (6th ed.1990)).

The Court must also review the relevant transaction for indicia of a less than arm's-length transaction.[100] Other than accepting nominal "ownership" of KNZ, there is no evidence Ms. Robertson had any knowledge or involvement in the details of the Proposed KNZ Sale. There is no evidence that Ms. Robertson had any of the properties or contracts for deed appraised to make an independent valuation. There is no evidence that she was involved in any type of negotiation with Debtor regarding the purchase price or terms of the various KNZ Purchase Agreements. Mr. Nguyen's fingerprints appear on all sides of the Proposed KNZ Sale, including extensive discussions with Certain Lending regarding the financing arrangements on behalf of KNZ to support the purchase. Given the closeness of KNZ to the Debtor, through Mr. Nguyen, and the lack of an arm's-length transaction, the Court easily finds KNZ to be a non-statutory insider of Debtor. Therefore the Court must apply heightened scrutiny to the Proposed KNZ Sale.

***Proposed KNZ Sale fails heightened scrutiny standard***

Where a sale is proposed to an insider, the heightened scrutiny standard requires evidence of fair dealing between a debtor and insider with respect to the proposed sale.[101] Fair dealing focuses on the actual conduct of corporate fiduciaries in effecting a transaction, such as its initiation, structure, and negotiation.[102] The concept of "due care" is directly relevant to the "fair process" prong of the entire fairness test. It can be established by evidence of careful consideration and process, including but not limited to, financial analyses, independent advice, and careful deliberation.[103] The Court notes that it has almost no information about KNZ, Certain Lending, the proposed financing arrangement, or the connections between KNZ, Debtor, and Mr. Nguyen.

---

[100] *In re U.S. Med.*, 531 F.3d. at 1278.

[101] *In re Latam Airlines*, 620 B.R. at 771.

[102] *Id*. at 773-74 (citing *Carlson v. Hallinan*, 925 A.2d 506, 531 (Del. Ch. 2006), *opinion clarified*, No. CIV.A. 19466, 2006 WL 1510759 (Del. Ch. May 22, 2006)).

[103] *Id*.

Other than Mr. Nguyen's testimony that Certain Lending has offered to provide financing for the Proposed KNZ Sale, the Court has no information about the transaction. Neither Ms. Robertson nor a representative of Certain Lending testified to their understanding or participation in the sale negotiations. There is no term sheet, no financial commitment letter, and no information about anticipated guarantees or who would provide those. In other words, the Court has no confidence that a bona fide lending relationship with Certain Lending is on the horizon. Far from a thoughtful, well-considered transaction, this sale has the feel of an ill-conceived proposal to allow Debtor to quickly shed the encumbrances of secured creditors from the KNZ Sale Properties, and allow Mr. Nguyen to escape his personal guaranties of its debt in the process. Given the nearly complete lack of information regarding the proposed transaction, the Court cannot find that the Proposed KNZ Sale resulted from a fair process.

In addition, Debtor and KNZ must show that the Proposed KNZ Sale results in a fair price. A debtor in possession has a fiduciary duty in any sale under § 363(b) to maximize the value of the estate.[104] Whether a price is fair is measured by reviewing the economic and financial considerations involved in the proposed sale, including the nature of the assets, market value, and risk.[105] The Proposed KNZ Sale is a private sale.  For those properties in which Debtor still holds a fee simple interest, the value of Debtor's interest would correspond to the market value of the property, subject to any encumbrances. Debtor presented a spreadsheet noting "market value" for each property, but provided no supporting documentation for those values.[106] For those properties that have been sold under a contract for deed, Debtor's interest is limited to the present value of

---

[104] *In re Fam. Christian, LLC*, 533 B.R. at 621; *In re Lahijani*, 325 B.R. 282, 288 (9th Cir. BAP 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances.").

[105] *See In re Latam Airlines*, 620 B.R. at 791.

[106] Debtor's Ex. D-3(a).

the anticipated income stream under the contracts, less any encumbrances on the income stream. Debtor's spreadsheet reports "market value" for each property subject to a contract for deed, but no testimony or evidence was provided regarding how those numbers were calculated or what they represent.[107] For example, the Steeds are obligated to make payments of $800.58 per month over the approximately 23 years remaining on the term under the Steed Contract. The current payoff amount under the Steed Contract is listed as $86,346.82,[108] but the "market value" of the property is listed as $100,000.[109]  Whether this is a valuation of the real property or of Debtor's interest in the Steed Contract is unclear from the table.[110]

The Court finds no evidence that any effort was made to market Debtor's interest in the properties or the contracts, and thus there is no way for the Court to determine whether the price offered by KNZ is fair. There was no evidence that the prices were negotiated between independent parties. The bottom line of the Proposed KNZ Sale appears to be driven by Debtor's desire to "buy out" the secured creditors' interests instead of reflecting the values of the underlying assets. Under the heightened scrutiny standard, the buyer has the burden to show it offered a fair price for the assets.[111]  KNZ has made no such showing.

### Conclusion

Based on the above, the Court finds Debtor has not met its burden to show the sale to KNZ is based on fair dealing or results in a fair price to the estate.  Because the Court has concluded it

---

[107] *Id.*

[108] *See supra* note 52.

[109] Debtor's Ex. D-3(a) at 2, line 44.

[110] The terms of repayment under the Steed Contract appear to be subprime, meaning that the present value of the Debtor's interest in the stream of payments could be more or less than the current payoff, depending on current market interest rates and the discount rate applied by a specific purchaser to account for risk. The interest rate in the Steed Contract is 9.9%. *See* First Bank Ex. 23.

[111] *In re Latam Airlines*, 620 B.R. at 769-70.

will not approve the sale as proposed, it will not address Debtor's request to invoke § 363(f) to sell the KNZ Sale Properties free and clear of the interests of the secured creditors.  Debtor has not made any showing that it is entitled to such relief.

Accordingly,

IT IS THEREFORE ORDERED that the Corrected Second Motion to Approve Sales of Debtor's Interest in Real Property of the Estate Free and Clear of All Liens, Claims, Encumbrances and Interests, filed by Nguyen Win Properties LLC, at ECF No. 244, is hereby DENIED.

Dated this 29th day of June, 2026.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

23